INTERNATIONAL PLAINFIELD MOTOR CO. v. LOCAL NO. 343, INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, C.I.O. et al.

No. C 958.

United States District Court
D. New Jersey.

Aug. 13, 1954.

**684**

Rothbard, Harris & Oxfeld, Samuel L. Rothbard, Newark, N. J., for defendants.

Julius Kwalick, Elizabeth, N. J., Julius Kass, New York City, of counsel, Elizabeth, N. J., for plaintiff.

FORMAN, Chief Judge.

Plaintiff, The International Plainfield Motor Co., has filed an amended complaint herein in two counts against the defendant, Local No. 343 International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C.I.O., (hereinafter known as the Local) and against the defendant, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, (hereinafter known as the International). In the First Count the plaintiff, among other things, alleges its engagement in the manufacture of trucks and the sale thereof in interstate and foreign commerce as a New Jersey corporation with its principal plant and offices in Plainfield, New Jersey; that the defendant Local is a voluntary unincorporated labor organization representing employees in industry affecting commerce with offices and agents engaged in such representation within the jurisdiction of this court; that the defendant International is a voluntary unincorporated international labor organization engaged in the supervision, representation, guidance and control of subordinate labor organizations affiliated with it, including the defendant Local within the jurisdiction of this court; that the action arises under Section 301 of Title 3 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185.

The first count of the complaint further alleges that on October 15, 1948, October 15, 1949 and October 18, 1950, respectively, the plaintiff entered into written agreements with the Local and the International, copies of which are annexed to the complaint and which plaintiff alleges, taken together, constitute the collective bargaining agreement currently in effect between plaintiff and defendants, and that together they have jointly reproduced the form and text of the understanding existing between them by virtue of the said agreements in a printed booklet also annexed to the complaint.

It is further alleged by the plaintiff in the first count that in the said combination of written agreements, plaintiff recognized defendant Local among other Locals, as the sole and exclusive bargaining agents for all of its production and maintenance employees and the said defendants, Local and International, agreed among other things not to engage in strikes at plaintiff's plant; that beginning on November 13, 1953 both defendants breached the agreement by engaging in strikes, concerted work stoppages, slowdowns, refusals to perform and other interruptions in the services regularly and usually performed which resulted in breakdowns and disruptions in the operation of plaintiff's business.

The second count of the amended complaint is the same as the first count except that it charges that commencing November 13, 1953, plaintiff's employees engaged in strikes, concerted work stoppages, slowdowns and other refusals to perform regular and usual services resulting in breakdowns and disruptions in the operation of plaintiff's plant; that both defendants breached their agreement by failing to take appropriate action to end the strikes and other interruptions and by failing to instruct the said employees to return to their normal and usual work.

The plaintiff demanded both compensatory and punitive damages.

The defendants made the following motion addressed to the complaint:

1. To dismiss the complaint as it fails to state a claim against each defendant upon which relief can be granted.

2. For summary judgment in favor of each defendant.

3. To dismiss the action because the complaint fails to state a claim against each defendant upon which relief can be granted in that § 301 of the Labor Management Relations Act of 1947, upon which the action is based, is unconstitutional and invalid.

4. To dismiss the action because of plaintiff's suit in the Superior Court of New Jersey, Law Division, Union County (Docket No. L 2849-53, The International Plainfield Motor Co., a corporation of the State of New Jersey v. Martin et al.) for the same alleged breach of the agreement which is the subject matter of this action. The defendants in that suit are the individual members of the Union here involved and therefore plaintiff has split its cause of action to unlawfully harass these defendants, and since it has elected to proceed in the New Jersey Superior Court, it has waived its right to sue these defendants in this court.

5. To require the plaintiff to file a more definite statement of its cause of action because the complaint is so vague and ambiguous that the defendants cannot reasonably be required to frame a defensive pleading.

The agreement of October 15, 1948 purports to have been made between the plaintiff and "International Union, United Automobile, Aircraft and Agricultural Implement Workers, Local 343 (an unincorporated association)", contains the following provision:

"24. The Union agrees that there will be no authorized strikes during the time of this agreement except in the event that subsequent to March 19, 1949 the parties have been unable to agree upon new wage rates and the agreement between the Company and the Union dated July 24, 1948 has expired and, in such event, the rights of the parties shall be the same with respect to the issue of wages as if no contract existed between the parties. The Union agrees not to ratify any unauthorized strike. It further agrees that if an unauthorized

strike occurs, the Local *and International Union* officials will immediately meet with the Company and take appropriate action to end the strike, including, but not limited to, public renunciation of the strike and instructions to employees to return to work. The Union further agrees that in the event of a strike in violation of this agreement, the Company may take disciplinary action against those workers who take part in the strike. The Company, for its part, agrees that there shall be no lockouts during the life of this agreement. As long as the Union, its officers, agents and employees comply with the above provisions the Company agrees not to bring any court action for damages or take other action which is not provided for in this contract, against the Union, its officers, agents and employees for breach of this Section. (Emphasis supplied). Exhibit A to Complaint, paragraph 24, pages 14-15."

The agreement is executed with the following signatures:

"International-Plainfield Motor Co.
By Dwight R. Collin

"International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C.I.O., Local 343
By George W. Kampf, Jr.
Walter T. Pritchard
Louis T. Fischer
Michael J. Mauro."

The agreement of October 15, 1949 purports to have been made severally "between Mack Manufacturing Corporation and International-Plainfield Motor Company, hereinafter referred to as the 'Company' and Locals 824, 343, 229 and 677, UAW-CIO." It contained the following provision:

"11. Except as hereinafter expressly specified, the Contracts dated October 15, 1948 between the Company and Locals No. 824, 343, 229

and 677 are each hereby extended for a period of one (1) year from the date hereof. It is understood that the 'no strike' paragraphs of said Contracts are subject to the provisions of Paragraph 7 of the Wage Agreement dated September 16, 1949 between the parties."

The agreement was executed by the following signatories:

"Local 229
    F. Klemser, Jr.
    Walter A. Richards
    Louis H. Arnold
"Local 343
    Walter T. Pritchard
    Otis M. Webber, Jr.
    Lons De Martino
"Local 677
    Warner Sensinger
    Ralph Lambert
    Robert J. McHugh
    Walter Huhn
"Local 824
    Charles Boll
    Joseph Hohn
    Lorenzo Oakley

"Mack Manufacturing Corporation
International-Plainfield Motor
Company
    By Dwight R. Collin

"U.A.W.–C.I.O.
    By George W. Kampf Jr.
    International Representative."

The agreement of October 18, 1950 purported to have been made "between Mack Manufacturing Corporation, International-Plainfield Motor Company and Locals 229, 343, 677 and 824, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, C.I.O." The following provision is contained in this agreement:

"21. Except as it may be modified or amended by the provisions of this memo, the Agreement dated October 15, 1949, shall be continued in effect for a period of five (5) years from the date hereof".

The signatories who executed this agreement appear as follows:

"Local 229
    Henry S. Gildersleeve
    Frank Klemser Jr.
"Local 343
    Percy E. Gill
    J. M. Alberti
    Louis T. Fischer
"Local 677
    Warner Sensinger
    Roy Glendenmeyer
    Robert J. McHugh
    Walter Huhn
"Local 824
    Joseph Hahn
    George W. Kampf, Jr.

International Representative—UAW–CIO–Region 9

"MACK MANUFACTURING CORP.
    Dwight R. Collin
    T. Miller
    C. F. Larsen
    A. C. Schliemer

"INTERNATIONAL–PLFD, MOTOR
    CO.
    Dwight R. Collin
    A. C. Schliemer"

The printed booklet referred to in the complaint bears the following legend on its front cover:

Mack
Trucks
Plainfield Plant
Agreement
between
INTERNATIONAL-PLAINFIELD
MOTOR CO.
and the
INTERNATIONAL UNION
UNITED AUTOMOBILE
AIRCRAFT AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA
LOCAL No. 343
(Affiliated with the Congress of
Industrial Organizations)
October 18, 1950.

It contains the same introductory paragraph as is set forth above in the agreement of October 18, 1950. It is to be noted that on page 87 of the booklet, what purport to be the printed signatures of the parties are headed under the sentence, "Executed this 15th day of October *1949* (sic) at New York, N. Y." Then the signatures are printed as they appear in the agreement of October 15, *1949* and not as they appear in the agreement of October 18, 1950. Other agreements follow in the booklet.

The defendants supported their motion with the affidavits of Martin Gerber, a member of the Executive Board of the defendant International, also known as "Regional Director". Among other things, he averred that under the constitution of the defendant International an international representative worked under the direct supervision of the member of the International Executive Board of the region to which he is assigned; that he was without authority to negotiate the terms of a contract without first obtaining approval of the local union, whereupon he is required to refer it to the Regional Director for his recommendation to the International Executive Board for its approval or rejection; that the member of the Executive Board

shall examine all contracts within the region before they are signed and submit them to the Executive Board with his recommendation; that in the event that he recommends approval, the contract becomes operative until the final action is taken by the Executive Board; and that "no local or other subordinate body, no officer, agent, representative or member thereof shall have the power or authority to represent, act for, commit or bind the International Union in any matter except upon express authority having been granted therefor in writing by the International Executive Board or the International President."

In his affidavits, Mr. Gerber denied that the defendant, International, was party to any of the agreements; that on their face they do not purport to be made between the plaintiff and the defendant, International, but solely with the locals; that the agreements of October 15, 1948 and 1949 had expired and the signature of George W. Kampf, Jr., as International Representative, on the contract of October 18, 1950, was placed thereon either to identify the document or in his capacity as a witness to the signatures of the officers or negotiating committee of the local or as a method of recommending the contract to the regional director to whom it was his duty to report the contract, but in no case did Mr. Kampf as International Representative have any authority to bind the defendant International.

Mr. Gerber likewise averred that he had not recommended the contract of October 18, 1950 to the Executive Board for its approval, and that neither it nor the International Convention, the highest body of authority of the International Union, had ever approved or ratified the said contract, that the defendant International was not a party to the contract so as to be bound by paragraph 24 of the agreement of October 15, 1948, since it was not named in the introductory paragraph thereof, and its duly authorized signature does not appear thereon; and that to his knowledge no contract exists, as is set out in the print-

ed booklet attached to the amended complaint.

The motion of the defendants was also supported by the affidavit of George W. Kampf, Jr., for nine years an International Representative of the defendant International, who averred among other things that he corroborated the statements of Mr. Gerber concerning his lack of authority to bind the defendant International; that he had no general or special authority to bind the defendant, International, by the signature he appended to the agreement of October 18, 1950, the only allegedly subsisting agreement, and that he did not intend to do so when he signed his name to the agreement.

There was also presented on behalf of the defendants, affidavits by Frank Moore, President of the defendant Local in which he, among other things, denied that the defendant Local had ever authorized a strike as alleged by the plaintiff, or ratified any unauthorized strike, or that any strike had in fact occurred during November, 1953, at the plaintiff's Plainfield plant; that upon receiving notification on November 19, 1953 from plaintiff's plant manager that certain employees had taken action concerning which he wished a discussion, he and other officials of the defendant Local conferred wtih him; that while he does not concede that any strike was in progress, officials of the local notified employees to terminate an interruption of work which had occurred in a few of the departments and that when, on November 20, 1953, these employees reported for work, they were prevented from returning to work by the action of the plaintiff itself.

On plaintiff's side, there are affidavits of Dwight W. Collin to show that in 1948 he was Vice President in charge of labor relations and personnel of the Mack Manufacturing Corporation and its wholly owned subsidiary, the plaintiff; that he executed the contract of February 28, 1949 effective as of October 15, 1948 and that it was signed by George W. Kampf, Jr., on behalf of the defendant, International; that this was followed by another agreement dated October 15, 1949, also signed by George W. Kampf, Jr., in the same way that the basic agreement of October 15, 1948 was extended by the agreement of October 18, 1950 for a period of five years, was also signed by the said George W. Kampf, Jr., as International Representative of the defendant, International; that the agreement dated October 15, 1948, as amended and modified by the agreements of October 15, 1949 and October 18, 1950 has been the document covering all collective bargaining relationships between the plaintiff and its employees ever since that date and in accordance with the grievance procedures contained within the said contract, the defendant Local and George W. Kampf, Jr., as the defendant International and its Assistant Director of the Mack Truck Department, has presented 9 disputes for arbitration covering 73 grievances; that in accordance with the terms of the said agreement the plaintiff has paid wages, operated a union shop, checked off union dues and transmitted the same to the defendant Local and has set up an insurance pension fund and paid large sums; that in addition plaintiff has operated its plant in accordance with the contractual provisions involving seniority, layoffs, transfers and all other terms and conditions, and the defendant and employees have accepted benefits in all instances; that the said George W. Kampf, Jr., filed an affidavit in the suit in the Superior Court of New Jersey, Chancery Division, Middlesex County, of H. Russell Reilley et als., Plaintiffs v. Brunswick Ordnance Corporation et als., C–149–51, in which he made reference to the agreements in this suit and to the preparation of a printed contract available for distribution; that paragraph 24 of the contract of October 15, 1948 as extended by the contracts of 1949 and 1950 contains an assumption of obligation on the part of the defendant International with regard to strikes and lockouts; that by virtue of the constitution of the defendant International, international representatives work under the direction

of the International President and copies of all contracts are on file with the Secretary-Treasurer of the International; that said George W. Kampf, Jr. has administered the terms and conditions of the contract with the express authorization and under the direct supervision of the defendant International as its International Representative and as a member of the Mack Truck Council, a subsidiary branch of the defendant International; that the occurrences set forth in the complaint happened since November 13, 1953 and that on that day he demanded that the defendants take appropriate steps to stop the strikes, work stoppages, slowdowns, and other concerted interruptions, but that the defendants failed to do so.

Edward Dinkel also supplied an affidavit on plaintiff's behalf stating that he is the Secretary of the Mack Truck Corporation and its affiliates including the plaintiff; that in October of 1950 he was Field Personnel Director and charged with the responsibility on behalf of plaintiff for the printing of the collective bargaining agreement between plaintiff and Local 343; that commencing on January 2, 1951 he met with a Committee of the Mack Truck Council and that the representative of Local 343 on the Committee was J. M. Alberti, who was also one of its representatives on the Negotiating Committee; that the Union Committee was headed by George W. Kampf, Jr., the International Representative of the defendant International and its Assistant Director of the Mack Truck Department; that as a result of the said meetings, printed proofs of the agreement were prepared, copies of which were examined and accepted by the Union; that after the signing of the agreement on October 18, 1950, copies were prominently posted in plaintiff's Plainfield plant for many months until a printed contract was prepared and available for distribution to the employees, since which time the printed copy has been the working operative agreement used in the daily relations between the plaintiff and the Union.

## I

In the case of Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir., 1948, 169 F.2d 580, 581, it was held that

"It is well-settled that on motions to dismiss and for summary judgment, affidavits filed in their support may be considered for the purpose of *ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue.* An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well-pleaded facts in the complaint.

\*  \*  \*  \*  \*  \*

"It is also well-settled that on a motion to dismiss the complaint must be viewed in the light most favorable to the plaintiff and that the complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim; further, no matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it. We so held in Continental Collieries v. Shober, 3 Cir., 1942, 130 F.2d 631, 635."

The defendant International contends that the complaint fails to state a cause of action upon which relief can be granted because examination of the printed booklet alleged to contain the contract between plaintiff and it contains neither reference to it in its introductory clause nor its signature at the end. There is a sufficient showing by plaintiff to create a controversy at this stage of the proceedings as to whether or not defendant International entered into a contractual relationship with plaintiff.

The amended complaint alleging directly a strike by plaintiff's employees and the agreement of defendants not to engage in a strike and their subsequent engagement therein overcomes the de-

fendants' objections voiced to deficiencies in the original complaint.

Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. under which defendants seek to enter summary judgment in their favor provides that a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law. * * *" (Italics supplied.)

From the affidavits submitted on behalf of the defendants, it appears that there never has been a collective bargaining contract between the plaintiff and the International; that although the contracts were signed by Mr. Kampf as International Representative, his signature was not appended to the contract with the intention of binding the International to the contract, but merely to identify the contract or as a means of recommending it to the regional director for his consideration; that the International representative cannot bind the International Union to anything; that the International did not instruct the members to engage in a strike at the Company; that no such strike occurred; that Article 24 of the 1948 contract does not bind the International Union to anything and that when any unauthorized strike occurred at the Company the International took appropriate steps to end it.

The defendant Local maintains that its proofs show there was never any such contract in the alleged form of the printed booklet; that no strike was ever authorized by the defendant local and no strike in fact occurred.

The plaintiff, on the other hand, contends its proofs show that there were collective bargaining agreements between it and the defendant International and Local 343 covering the period from 1948; that the said contracts were signed by the International Representative of the defendant International, George W. Kampf, Jr., in accordance with the authority conferred upon him to negotiate such a contract on behalf of the defendant International; that the defendants issued instructions to their members to engage in a strike; that such a strike occurred on or about November 13, 1953; that the officials of the plaintiff demanded of the defendants that they take appropriate action to end the strike and that the defendants refused to take such steps.

■ It is apparent that the affidavits of the parties set up assertions that are diametrically opposed, and taken together with the well pleaded allegations contained in the complaint, create a genuine issue as to material facts.

## II

■ The defendants next contend that they are entitled to have the complaint dismissed because Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, on which it is based is unconstitutional and invalid because (a) it attempts to extend the jurisdiction of the United States District Court beyond the limits prescribed by Article III, Section 2 of the United States Constitution and purports to confer jurisdiction without regard to diversity of citizenship; (b) for the same reason it is said that Section 301 violates the rights reserved to the states under the Tenth Amendment and (c) it deprives unions of the defense that an alleged agent for whose acts they are being sued was never authorized to act nor were his actions ratified, and, in consequence, deprives unions of their property without due process of law under the Fifth Amendment.

Section 301 provides,

"(a) Suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

* * * * * * *

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or .(2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

\* \* \* \* \* \*

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were. actually authorized or subsequently ratified shall not be controlling."

The questions raised by defendants in (a).- and · (b) have been tested in the lower courts with adverse results to the precise contentions they make here. Among other cases, they were discussed in Colonial Hardwood Flooring Co., Inc., v. International Union United Furniture Workers of America, D.C.Md.1948, 76 F.Supp. 493 and the constitutionality of Section 301 was upheld. In 1950 the Court of Appeals of the Second Circuit affirmed a judgment against the Union under this section in the case of Shirley-Herman Company, Inc., v. International Hod Carriers, Building and Common Laborers Union of America, Local Union No. 210, 182 F.2d 806.[1] Relying on Colonial Hardwood ·Flooring Co., supra, and other decisions the Court said,

"Thus the section imposes liability despite the lack of actual authorization or ratification of the acts of union agents. It makes unions suable as entities. It provides for judgments to be recoverable from the union's assets. And the report of the Senate Committee on Labor and Public Welfare, which considered this bill, noted that 'to en-courage the making of agreements and to promote industrial peace through faithful performance by the parties, collective agreements affecting interstate commerce should be enforceable in the Federal courts.' The Committee then said that the difficulty at that time was that 'there are no Federal laws giving either an employer or even the Government itself. any right of action against a union for any breach of contract. Thus there is no "substantive right" to enforce, in order to make the union suable as such in Federal courts.' Sen.Rep. No. 105, 80th Cong., 1st Sess., 15–17. From this language it must be supposed that the Committee intended its legislation to supply the substantive remedy which it thought needed. And the report of the House Committee on Education and Labor also seems to contemplate a generally applicable and uniform federal substantive right. H.R.Rep. No. 245, 80th Cong., 1st Sess., 46.

"(4) The right thus created makes no requirement that bad faith be shown. In view of the overriding power of Congress to regulate interstate commerce, it must be upheld and state law as to bad faith is therefore of no relevance. Philco Corp. v. Phillips Mfg. Co., 7 Cir., ·133 F.2d 663, 148 A.L.R. 125; O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539. Hence the district court was correct in refusing to dismiss the complaint and in charging the jury to the contrary of the defendant's conten-tions." 182 F.2d at page 809.

Where the contract allegedly violated is between an employer and a labor organization this Circuit, in 1954, in the case of Association of Westinghouse Salaried Employees v. Westinghouse. Electric Corp., 210 F.2d 623, 625, held that

"Section 301(a) is a grant of federal-question jurisdiction and

---

1.  See Annotation to this case in 17 A.L.R.2d p. 614.

thus creates a federal, substantive right. Shirley-Herman Company, Inc., v. International Hod Carriers, etc., supra; 3 Moore's Federal Practice § 17.25 (2d Ed. 1948)."

In the light of these and other authorities the attack upon the constitutionality of the sections in question cannot be sustained.

### III

Defendants' last ground upon which it is alleged that the complaint should be dismissed is that the Company by commencing an action in the Superior Court of New Jersey against the officers, shop committeemen, alternate committeemen, stewards and alternate stewards of Local 343 and officials of the International Union has elected the forum of its choice and, therefore, it has waived any rights to sue in this court. This is said to be so because the complaint in each case is grounded on the no strike provision in the October 18, 1950 "agreement" and its breach thereof by the defendants and to allow the plaintiff to harass these defendants with two suits would be unconscionable.

Congress, in this instance, however, has conferred jurisdiction upon federal district courts, in that

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

■ It is clearly indicated that Congress conferred jurisdiction upon the federal district courts when a labor union itself is a party to the action, and if the suit is grounded upon the violation of a collective bargaining agreement. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., supra. See John Hancock Mut. Life Ins.

Co. v. United Office & Professional Workers, D.C.N.J.1950, 93 F.Supp. 296 304; Superior Engraving Co. v. N. L. R. B., 7 Cir., 183 F.2d 783, certiorari denied, 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671.

Congress not only has created a substantive right in the exercise of its power under Article 1, § 8, cl. 3 of the Federal Constitution, the commerce clause, but it has also provided both the procedure for enforcing that right and the forum in which disputes between an employer and a labor union shall be heard.

■ Although the gravamen of the complaints in the case in the Superior Court of New Jersey and in this court are the same, the defendants in each case are different. In the former case it is the named individuals who are the defendants, while in this case the defendants are the unions, the entities, and not the individuals.

Since the federal court has been provided as the forum in which disputes of this nature are to be tried and determined, no other forum is available. The plaintiff did not waive its right to institute suit here in bringing its suit against individual defendants in the State Court.

### IV

■ Alternatively to the granting of their motions to dismiss and for summary judgment, the defendants seek to have the plaintiff file a more definite statement of its cause of action under Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that "the present Amended Complaint is so vague and ambiguous that defendants cannot reasonably be required to frame a defensive pleading."

In support of their motion, the defendants allege that "the plaintiff uses a great many words to allege varying conduct on behalf of defendants, their officers, agents, etc., but nowhere is the language specific enough to adequately point out just what the defendants are accused of having done."

The complaint is full enough to apprise the defendants of the nature of the suit against them so that they may answer. Greater detail could only be of utility to the defendants in the preparation of their defense, and, if required, may be achieved by resorting to the effective tools for discovery provided by the Rules. The demand for a more definite statement may not be granted. Colonial Hardwood Flooring Co., Inc., v. International Union, etc., supra, 76 F.Supp. at page 496.

In the light of the above reasoning, all of the defendants' motions are overruled. An order should be entered accordingly, providing that defendants should answer within twenty days from its date.