## DEPARTMENT OF EDUCATIONAL AND CULTURAL SERVICES

v.

## MAINE STATE EMPLOYEES ASSOCIATION.

Supreme Judicial Court of Maine.

Argued June 9, 1981.

Decided Aug. 11, 1981.

Michael C. Ryan (orally), Division of Employee Relations, Augusta, for plaintiff.

Shawn Keenan (orally), Main State Emp. Ass'n, Augusta, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

Defendant Maine State Employees Association (MSEA) appeals from an order of the Superior Court (Kennebec County) permanently staying arbitration of a grievance between plaintiff Department of Educational and Cultural Services (the Department) and its former employee, Peter Roach. The grievance arose out of the Department's dismissal in June 1980 of Roach from his position as teacher-principal of Kingman Elementary School. MSEA asserts on appeal that its collective bargaining agreement with the Department providing for binding arbitration applies to the 1980 grievance and that the Superior Court erred in holding that the State Employees Appeals Board had jurisdiction over the matter. We agree, and accordingly reverse the judgment below.

■ The issue presented by the case at bar can be understood only against the background of the statutes governing the resolution of disputes between state employees and their employing agencies. Under 5 M.R.S.A. §§ 751–53 (1979 & Supp. 1980) the State Employees Appeals Board has jurisdiction to "mediate the final settlement of all grievances and disputes between individual state employees, both classified and unclassified, and their respective state agencies." *Id.* at § 752. That general provision is, however, limited by language in the State Employees Labor Relations Act, 26 M.R.S.A. §§ 979–979–P (1974 & Supp. 1980). Specifically, section 979–K provides:

An agreement between a bargaining agent and the public employer may provide for binding arbitration as the final step of a grievance procedure, provided that any such grievance procedure shall be exclusive and shall supersede any otherwise applicable grievance procedure

provided by law. If no such provision is contained in the collective bargaining agreement, the parties shall submit their differences for resolution by the State Employees Appeals Board.

Thus, as a general proposition, a grievance between an individual state employee and his employing agency is by 5 M.R.S.A. § 752 subject to the mediation of a final settlement by the State Employees Appeals Board. However, 26 M.R.S.A. § 979–K empowers a union and the State in collective bargaining to oust the State Employees Appeals Board of jurisdiction over employee grievances that later arise and to substitute therefor binding arbitration.

The undisputed facts in the instant case are as follows: The 1980 dismissal of Roach was not the first disciplinary action taken by the Department against him. On May 2, 1979, the Department notified Roach that he was being discharged from his position as teacher-principal for failure adequately to perform his administrative responsibilities. Three weeks later the Department and MSEA entered into a collective bargaining agreement for the year 1979–80 governing the bargaining unit of which Roach was a member. Article XLV of that agreement prescribed a four-step grievance procedure, the last step of which was mandatory and binding arbitration.

The 1979–80 agreement provided that it was "entered into as of April 1, 1979." That retroactivity provision notwithstanding, the parties stipulated before the Superior Court that certain provisions, including Article XLV, were expressly excepted from the retroactivity provision and instead took effect on the day in late May when the agreement was executed. Because Article XLV was not yet in force when Roach was notified of his upcoming discharge and no former agreement between the parties provided for binding arbitration of disputes, Roach and MSEA took his 1979 grievance to the State Employees Appeals Board (the Board). In August 1979 the Board reinstated Roach, subject to a "probationary period of six months" and the requirement that during that time he "perform the adminis-

trative functions of his job in a manner reasonably satisfactory to his superiors." The Board's order further provided that if Roach failed in the performance of his administrative duties the Department would be "expected to take appropriate disciplinary action including dismissal, if necessary."

In February 1980, near the end of the six-month probationary period specified in its order, the Board on the joint petition of MSEA and the Department extended that period through June 30, 1980. On June 16 the Department notified Roach that, in its opinion, he had failed to perform his administrative responsibilities satisfactorily during his probationary period and that it was terminating his employment. MSEA again commenced proceedings seeking Roach's reinstatement with back pay, but this time it proceeded pursuant to Article XLV of the 1979–80 collective bargaining agreement. When the preliminary steps provided for in the agreement failed to resolve the dispute, MSEA sought to submit the dispute to arbitration. After an arbitration hearing on Roach's grievance had been scheduled for December 30, 1980, the Department on December 17 instituted proceedings in the Superior Court under the Uniform Arbitration Act, 14 M.R.S.A. § 5928(2) (1980), seeking a stay of the arbitration. After hearing, a Superior Court justice ordered a permanent stay of the arbitration, on the ground that the 1980 grievance, along with the 1979 one, were within the jurisdiction of the State Employees Appeals Board. He explained his decision as follows:

> [T]he conduct that is the subject of this litigation, the [1980] grievance, is the same type of conduct, and it is [in] my opinion inextricably interwoven with what gave original rise to the first hearing before the Board . . . .

MSEA now appeals from that stay order.

■ On the undisputed facts in the case at bar, the Superior Court justice erred in concluding that the 1980 grievance fell within the jurisdiction of the State Employees Appeals Board because it was inextricably interwoven with the 1979 dispute.

Roach was first dismissed in May of 1979 for failure to perform his administrative duties properly. Three months later, he was reinstated by the Board, subject only to a probationary period at the end of which, in the words of the Board's order, the Department was free "to take appropriate disciplinary action including dismissal, *if necessary.*" (Emphasis added) A clear implication of that language was that the Department would take no disciplinary action at the end of that period if none was needed. In June 1980, after the probationary period had been extended to the end of the 1979–80 school year, the Department concluded that Roach's performance of his administrative duties during that year did require his dismissal and it acted accordingly. As far as the Board was concerned in August 1979, however, the 1979 grievance was resolved. Roach's status following his reinstatement was like that of any other employee except that he was on probation.

■ The Department, seizing upon the Board's August 1979 order reinstating Roach for a probationary period, argues that the Board must have retained jurisdiction in order to oversee that probationary period. Thus, the Department argues, the Board's order rendered the collective bargaining agreement inapplicable, by making any dispute between the parties at the end of the probationary period a continuation of their 1979 dispute, and thus as much subject to the Board's jurisdiction as was that original dispute. The undisputed facts refute that contention of the Department. Significantly, the Board's August 1979 order neither required nor contemplated that the parties report back to the Board on the outcome of the probationary period or obtain a further Board order relative to the 1979 grievance. Rather, the order itself was the final disposition of that matter. It obviously operated on the principle that at the end of the probationary period the employer would be free to take whatever disciplinary action it found necessary, and Roach in turn would be free to resort to whatever grievance procedures were then available to him. By its plain language, the

Board's order undertook no function beyond the obvious one of setting up a probationary period, after which the parties would be left to their own devices. Nothing in the record supports any conclusion but that the two disputes in 1979 and 1980 were separate and distinct.

Since the 1980 dispute arose during the term of the 1979–80 collective bargaining agreement between the Department and MSEA, its resolution is governed by that agreement. The question, arising from the statutes governing the resolution of public sector labor disputes, that must now be resolved either by an arbitrator or the State Employees Appeals Board, is whether Roach's 1980 dismissal violated Article XLIV, § 1, of the agreement. That Article provided in pertinent part that "[n]o employee shall be disciplined by the State without just cause." Roach's claim that the Department had no just cause for discharging him raises a "grievance," which is defined under Article XLV, § 1.2, of the collective bargaining agreement as "a dispute concerning the interpretation or application of the terms or provisions of this Agreement." Article XLV, § 1.1, gives employees the right to present grievances in accordance with a four-step procedure later set forth in that Article. The final step 4 provides that "[i]f the grievance has not been satisfactorily resolved at Step 3, then MSEA may submit the grievance to arbitration." *Id.* at § 2.4(a).[1] The arbitrator's decision is "final and binding consistent with applicable law and this Agreement." *Id.* at § 2.4(d). Where the collective bargaining agreement has thus "provide[d] for binding arbitration as the final step of a grievance procedure," the State Employees Labor Relations Act declares that arbitration "shall be exclusive and shall supersede any otherwise applicable grievance procedure provided by law." 26 M.R.S.A. § 979–

K. The statute and the bargaining agreement together authorize, and indeed require, MSEA to submit its grievance over Roach's dismissal exclusively to arbitration. By the plain language of section 979–K, the State Employees Appeals Board has no jurisdiction over the present dispute.

■ The Department, however, asserts that MSEA waived its right to arbitrate the 1980 dispute by joining the Department in February 1980 in requesting the Board to extend the probationary period. The joint petition by which MSEA and the Department requested the extension answers that argument. The petition explicitly provided:

No party shall be deemed by this petition to have waived any rights or obligations under the provisions of the Professional and Technical Services Agreement between the State and MSEA.

In any event, it is doubtful at best whether MSEA could confer jurisdiction on the Board over the separate disciplinary action taken against Roach during the term of the collective bargaining agreement in the face of the clear direction of 26 M.R.S.A. § 979–K, which denies the Board any power to hear labor disputes in the public sector where the controlling agreement mandates binding arbitration as the final step in a grievance procedure.

■ This litigation between the Department and MSEA presents another issue that, under the circumstances of the case, we have no reason to discuss at length. Article XLV, § 2.4(e), of the 1979–80 agreement between the Department and MSEA provided in pertinent part:

In the event of a disagreement regarding the arbitrability of an issue, the arbitrator shall make a preliminary determination as to whether the issue is arbitrable.

By our reading of that clause, the parties to the collective bargaining agreement have

---

1. The parties in so contracting were exercising the option given them by section 5927 of the Uniform Arbitration Act, 14 M.R.S.A. § 5927 (1980), which reads in pertinent part:

[A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable

and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives, unless otherwise provided in the agreement.

stipulated that *in the first instance* the arbitrator will decide the issue of whether the 1980 grievance was arbitrable.[2] *See McCarroll v. Los Angeles County District Council of Carpenters,* 49 Cal.2d 45, 65–66, 315 P.2d 322, 333 (1957), *cert. denied,* 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958). We reject the very limited interpretation the Department would have us give the clause, namely, that the arbitrator should make that initial decision on arbitrability only when the question is first raised before the arbitrator. Such a construction would render the provision of little meaning; it would put a premium on winning a race to the courthouse and could well make the outcome turn on fortuities of timing and forum.

 Even though the parties contracted for the arbitrator's preliminary decision on any question of substantive arbitrability, we elect not to postpone the court decision of the question whether the 1980 grievance was arbitrable. The resolution of that grievance is simplified and expedited by our deciding the arbitrability issue at once. The substantive arbitrability issue is a pure question of law involving the interrelationship between the parties' contractual language and the statutory authority governing state employees' labor relations; and the arbitrator, in making "a preliminary determination as to whether the issue is arbitrable," must do so in accordance with controlling law. Unless the contract clearly provides to the contrary—and this one does not—"the final decision on the question of substantive arbitrability is the function of the court, not of the arbitrator," *Westbrook School Committee v. Westbrook Teachers Association, supra* at 207. Before the Law Court, the parties have fully briefed and argued that question and none of the relevant facts are in dispute. Under the very special circumstances here present and in the interest of judicial economy, we decide as a matter of law that the parties are bound to submit the 1980 grievance to contractual arbitration, to the exclusion of statutory "mediation" by the Board.

The entry must be:

Appeal sustained.

Judgment of the Superior Court reversed.

All concurring.

---

2. For reasons of expedition and economy, as well as to take advantage of the arbitrator's labor relations expertise, parties to labor contracts often bargain for the submission of questions of substantive arbitrability to an initial ruling by the arbitrator. *See* F. Elkouri & E. Elkouri, *How Arbitration Works* 173–75 (3d ed. 1973).

However, anyone who makes the further claim that the parties to a collective bargaining agreement have made the arbitrator's determination of substantive arbitrability final, to the exclusion of the courts, "must bear the burden of a clear demonstration of that purpose." *Westbrook School Comm. v. Westbrook Teachers Assn.,* Me., 404 A.2d 204, 207 n.5 (1979), *citing and quoting United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n.7, 80 S.Ct. 1347, 1353 n.7, 4 L.Ed.2d 1409 (1960).