Shaw Electric Company, Inc. *v.* International Brotherhood Electrical Workers Local Union No. 98, Appellant.

Argued November 21, 1963; reargued November 19, 1964.  Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard N. Katz,* with him *Meranze, Katz, Spear & Bielitsky,* for appellant.

*Pace Reich,* with him *Modell, Pincus, Hahn & Reich,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 22, 1965:

Shaw Electric Co., appellee, filed a complaint seeking injunctive relief restraining appellant-union from picketing its job sites and place of business and an order requiring appellant to conform to its collective bargaining contract.  It also sought compensation for damages which have accrued, and will continue to accrue, by means of the alleged illegal contract termination and alleged illegal acts thereafter.  Appellant filed preliminary objections contesting the jurisdiction of the court below.  The objections were dismissed and this appeal questions the correctness of that dismissal.

I

Appellant, relying upon *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773 (1959),

contends that the case is within the exclusive jurisdiction of the National Labor Relations Board. There are, however, well recognized exceptions to the general rule established in *Garmon*, a rule which requires state courts to defer to the jurisdiction of the Board whenever the activity involved is arguably subject to Sections 7[1] or 8[2] of the National Labor Relations Act, as amended. One significant exception was upheld in *Local 174, Teamsters Union v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571 (1962), which sustained state court jurisdiction in a suit for violation of a collective bargaining contract on the ground that the preemptive doctrine expressed in *Garmon* is irrelevant in such a case.[3]

Appellant acknowledges this exception but contends that the present case is not a suit for breach of a contract. Our reading of the record, however, leads us to agree with the court below which concluded that the complaint alleges that appellant has unjustifiably refused to abide by its contract.

The facts alleged in the complaint may be summarized as follows. Appellee is an electrical contractor and appellant is a union whose members are electrical workers. At all relevant times, there existed a contract between the parties which is attached to the complaint.[4] Various allegations of the complaint indicate that the contract continues to exist and that plain-

---

[1] Act of July 5, 1935, c.372, §7, 49 Stat. 452, as amended, 29 U.S.C. §157.

[2] Act of July 5, 1935, c.372, §8, 49 Stat. 452, as amended, 29 U.S.C. §158.

[3] In *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S. Ct. 267 (1962), state court jurisdiction was upheld in an employee's action for damages resulting from an alleged violation of a collective bargaining agreement, even though the alleged conduct was conceded to be an unfair labor practice within the Board's jurisdiction.

[4] In summarizing these allegations, we have considered the provisions of this contract in conjunction with statements alleged in the paragraphs of the complaint.

tiff suffered, and continues to suffer, damages as a result of appellant's continuing breach. Appellant-union is obliged by the contract to supply the contractor with unionized electrical workers. On August 9, 1961, as a consequence of the re-employment in 1957 of a returning veteran, appellant terminated its agreement with the appellee.[5] The contract provides: "This Agreement shall . . . continue in effect from year to year . . . from September 1, to September 1 of each year, unless changed or terminated in the way later provided herein. . . . Either party desiring to change or terminate this Agreement must notify the other in writing at least sixty (60) days prior to September 1st of any year. Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, and until a satisfactory conclusion is reached, in the matter of such changes, the original provision shall remain in full force and effect." Furthermore, the contract states that "in the event that any part or parts of this Agreement are found by proper authority to be in conflict with any mandatory State or Federal law or regulation, then such part or parts of the Agreement shall be modified to the extent of compliance with the applicable State or Federal law or regulation." The contract also sets up ma-

---

[5] The returning veteran had been an employee of appellee prior to the date that the contract with appellant was executed. When he returned and applied for statutory re-employment rights under the Universal Military Training and Service Act, Act of June 24, 1948, c.625, §9, 62 Stat. 614, as amended, 50 U.S.C. App. §459, appellee requested that the union admit him as a member and allow him to be re-employed. The union denied these requests. The United States Department of Employment, Bureau of Veteran Re-Employment Rights, insisted that the returning veteran be re-employed and the employer was advised by the government and its own counsel that failure to do so would result in serious financial consequences. (See generally, *Tilton v. Mo. Pac. R.R.*, 376 U.S. 169, 84 S. Ct. 595 (1964).) Thus, appellee re-employed the veteran.

chinery by which a "Labor-Management Committee" is to decide "all disagreements, or claims, of violation of this Agreement . . . which cannot be adjusted between the duly authorized representatives of the Union and the Employer . . . . Where possible there shall be no lockout, or removal of men by the Union prior to a decision by the Committee." The contract further provides for reference of cases where the committee is unable to render a decision by majority vote to the Council on Industrial Relations for the Electrical Construction Industry of the United States and Canada, whose decision shall be final and binding on all parties.

The complaint further alleges that subsequent to the unlawful termination of the contract by appellant on August 9, 1961, appellant caused its members to picket jobs which appellee had undertaken so as to cause appellee to lose work in which it was engaged. Appellee's efforts to be "reinstated" with appellant proved futile. As a result of appellant's conduct, appellee has been unable to bid for or obtain work requiring unionized help and has suffered irreparable harm and great damage. From August 9, 1961, to the date of the complaint, financial damages in excess of $100,000 have been incurred and future damages will continue to be incurred by reason of appellant's actions.[6]

We hold that the allegations constitute a suit for violation of a collective bargaining contract, a suit to

————

[6] The complaint is ineptly drawn and leaves much to be desired. However, we should not *summarily* dismiss the complaint and the action when it is so evident from a reading of the complaint and the agreement, attached to and made part of the complaint, that the appellee alleges that the collective bargaining agreement between the parties has been breached and violated by a termination of the agreement in a manner inconsistent with the agreement-provided method of termination and by a failure on appellant's part to abide by and follow the agreement-provided procedure for the determination of any disagreements between the parties.

which the preemptive doctrine expressed in *Garmon* does not apply. The circumstances of the ex parte termination of the contract and the other acts of appellant, when viewed in the light of contractual provisions such as those requiring arbitration, a notice period for termination, and compliance with state and federal laws or regulations, raise issues of contractual violations. Because the case is before us merely on appeal after preliminary objections, we, of course, express no opinion as to whether appellee could make out a case warranting either injunctive relief or damages. The question whether appellant has violated contractual obligations justifying such relief would, in the first instance, be the subject of factual and legal determinations by the court below after evidence is received and argument heard.

## II

Appellant argues that even if the preemptive doctrine of *Garmon* is irrelevant in the present case, the court below lacks jurisdiction to entertain a complaint in equity seeking the type of injunctive relief requested by appellee. It is clear that state court jurisdiction lies to order a breaching party to follow procedures contained in a collective bargaining agreement, see *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 84 S. Ct. 401 (1964), and that state courts may award resultant damages flowing from breach of contract. E.g., *Local 174, Teamsters Union v. Lucas Flour Co.*, supra. We are thus faced with the precise issue of whether, in addition to ordering arbitration and granting damages, a state court may grant injunctive relief which enjoins activities precluded by the collective bargaining agreement.[7]

---

[7] The Supreme Court of the United States has expressly refrained from intimating any view on the question of whether the Norris-LaGuardia Act is applicable in a suit brought in a state court

It is now clear that substantive principles of federal labor law[8] are applicable in both federal and state courts suits brought under §301[9] of the Labor Management Relations Act of 1947. *Local 174, Teamsters Union v. Lucas Flour Co.,* supra. Appellant contends that since *Sinclair Ref. Co. v. Atkinson,* 370 U.S. 195, 82 S. Ct. 1328 (1962), holds that the anti-injunction provisions of the Norris-LaGuardia Act[10] apply to federal courts in §301 suits, that such provisions must be held applicable under the *Lucas* principle to suits brought in state courts as well. However, we are persuaded that the rationale underlying the holding in *Sinclair* is inconsistent with appellant's view.

In *Sinclair,* an employer sought, in a United States district court, to enjoin a union from violating a no-strike agreement. After examining the language and history of §301, the Supreme Court of the United States concluded that Congress did not intend to partially repeal the Norris-LaGuardia Act and held that the district court was correct in dismissing that count of the complaint which sought federal injunctive relief expressly prohibited by that Act. Nothing in *Sinclair*

---

for violation of a collective bargaining contract. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 514 n.8, 82 S. Ct. 519, 526 n.8 (1962).

[8] See *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S. Ct. 912 (1957).

[9] Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. §185(a), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ."

The section has been expressly held not to preclude, by itself, state court jurisdiction. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S. Ct. 519 (1962).

[10] Act of March 23, 1932, 47 Stat. 70, as amended, 29 U.S.C. §§101-15.

remotely suggests that Congress intended to *amend* the Norris-LaGuardia Act so as to extend its anti-injunction limitations to state courts.[11]  Indeed, the majority opinion in *Sinclair* indicated at several points that Congress deliberately chose not to modify or alter the anti-injunction provisions of the Norris-LaGuardia Act. For example, the majority said: "The unequivocal statements in the House Conference Report and by Senator Taft on the floor of the Senate could only have been accepted by the Congressmen and Senators who read or heard them as assurances that they could vote in favor of §301 without altering, reducing or impairing in any manner the anti-injunction provisions of the Norris-LaGuardia Act." 370 at 209, 82 S. Ct. at 1336. At another point, the majority concluded: "Nor can we agree with the argument made in this Court that the decision in Lincoln Mills,[12] as implemented by . . . subsequent decisions . . ., requires us to reconsider and overrule the act of Congress in refusing to repeal or modify the controlling commands of the Norris-LaGuardia Act." 370 at 213, 82 S. Ct. at 1338.

---

[11] The highest federal court in this circuit has recently said "that Sinclair did no more than hold that, in an action under §301(a) of the Labor Management Relations Act, a *court of the United States*, because of the strictures of §4 of the Norris-LaGuardia Act is without jurisdiction to enjoin a union's breach of the 'no-strike' provisions of its collective bargaining agreement in a case involving or growing out of a labor dispute; that the Norris-LaGuardia Act, enacted as it was under Congress' constitutionally granted power to regulate the jurisdiction of inferior federal courts, limits only the jurisdiction of such courts; that the Act did not preempt the field with respect to litigation of the type here involved; and Congress cannot constitutionally limit the remedial powers of state courts where it has not preempted the field." *American Dredging Co. v. Local 25, Marine Div., Int'l Union of Operating Eng'rs*, 338 F. 2d 837, 855 (3d Cir. 1964), cert. denied, 380 U.S. 935, 85 S. Ct. 941 (1965).

[12] *Textile Workers Union v. Lincoln Mills*, supra note 8 (Footnote ours.)

The Supreme Court, in summarizing the history of §301 in *Sinclair,* pointed out that, as finally enacted, §301 was the product of a conference between committees of the House and Senate selected to resolve differences between conflicting provisions of their respective bills. Prior to the conference, the House bill expressly made the Norris-LaGuardia Act's anti-injunction provisions inapplicable to §301 suits. The Senate bill contained no such provision, but instead made the breach of a collective agreement an unfair labor practice which could be enjoined by the National Labor Relations Board. These changes never became law since the conferees agreed "that suits for breach of such agreements should remain wholly private and 'be left to the usual processes of the law' and that, in view of the fact that these suits would be at the instance of private parties rather than at the instance of the Labor Board, no change in the existing anti-injunction provisions of the Norris-LaGuardia Act should be made." (Footnote omitted.) 370 U.S. at 207, 82 S. Ct. at 1335.

We cannot ignore this congressional intention to leave the existing anti-injunction provisions of the Act unchanged; nor can we ignore the congressional mandate to leave such suits to the usual processes of law, which must, of course, include state procedures permitting private parties to obtain injunctive relief.

The opinion in *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S. Ct. 519 (1962), reinforces our conclusion that Congress did not intend to limit the jurisdiction of state courts by passage of §301.[13] The Su-

---

[13] Beyond the question of congressional *intention* lies the question of congressional *power* to preclude, in the absence of preemptive legislation, state court remedies in this area, a question as to which we express no opinion. For an excellent discussion, see *McCarroll v. Los Angeles County Dist. Council of Carpenters,* 49 Cal. 2d 45, 61-63, 315 P. 2d 322, 331-32 (1957) (TRAYNOR, J.). See

preme Court recognized that Congress was completely
familiar with the laws of the various states as well as
the availability of relief, the alternate means of re-
covery, and the scope of remedies with respect to suits
involving bargaining contracts. The Court noted that
the "clear implication of the entire record of the con-
gressional debates in both 1946 and 1947 is that the
purpose of conferring jurisdiction upon the federal dis-
trict courts was not to displace, but to supplement, the
thoroughly considered jurisdiction of the courts of the
various States over contracts made by labor organiza-
tions."[14] Id. at 511, 82 S. Ct. at 525.

Nor do the policies underlying the Supreme Court's
decision in *Local 174, Teamsters Union v. Lucas Flour
Co.,* supra, require the anti-injunction restriction of
the Norris-LaGuardia Act to be read as a limitation
on state proceedings. In holding that §301 mandates
the use of substantive principles of federal labor law,
the Supreme Court emphasized the importance of uni-
formity in the interpretation of contractual provisions

---

also *American Dredging Co. v. Local 25, Marine Div., Int'l Union
of Operating Eng'rs,* supra note 11. *But see* Aaron, "Strikes in
Breach of Collective Agreements: Some Unanswered Questions,"
63 Colum. L. Rev. 1027, 1035 (1963).

[14] The remarks of Senator Ferguson which the Supreme Court
cited (368 U.S. at 512, 82 S. Ct. at 525) as the only explicit men-
tion of the question in the debate of 1946 are especially pertinent:
"MR. FERGUSON. Mr. President, there is nothing whatever in the
now-being-considered amendment which takes away from the State
courts all the present rights of the State courts to adjudicate the
rights between parties in relation to labor agreements. The amend-
ment merely says that the Federal courts shall have jurisdiction.
It does not attempt to take away the jurisdiction of the State
courts, and the mere fact that the Senator and I disagree does
not change the effect of the amendment. MR. MURRAY. But it au-
thorizes the employers to bring suit in the Federal courts, if they
so desire. MR. FERGUSON. That is correct. That is all it does. It
takes away no jurisdiction of the State courts." 92 Cong. Rec. 5708.

as the rationale for its conclusion.[15]   However, different meanings with respect to the same contractual terms would not result from the exercise of the historic state judicial power to grant injunctive remedies. Surely, the interpretation of contractual clauses does not hinge on the form of relief to be granted.   Furthermore, the inapplicability to state courts of the anti-injunction provisions of the Norris-LaGuardia Act does not conflict with the "mandate of Lincoln Mills,[16] requiring issues raised in suits of a kind covered by §301 to be decided according to the precepts of federal labor policy." 369 U.S. at 103, 82 S. Ct. at 576.

Appellant contends that the Norris-LaGuardia Act is an expression of federal labor policy and as such must be incorporated within and made an integral part of the national labor policy expressed in §301.   Even so, it does not follow that the Norris-LaGuardia Act, if woven into the fabric of §301, would express a national labor policy to prohibit the granting of injunctive relief by state courts in the face of the language

---

[15] "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.   Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation.   Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes." [Footnote omitted.] 369 U.S. at 103-04, 82 S. Ct. at 577.

[16] Supra note 8.   (Footnote ours.)

and judicial history of the Act.[17] We must agree with the Court of Appeals for the Third Circuit which recently stated: "There is nothing in the language of the Act or its legislative history which can possibly, within 'the range of judicial inventiveness', or the process of judicial *fashioning*, be construed as extending to the jurisdiction of state courts." *American Dredging Co. v. Local 25, Marine Div., Int'l Union of Operating Eng'rs*, 338 F. 2d 837, 852 (3d Cir. 1964), cert. denied, 380 U.S. 935, 85 S. Ct. 941 (1965).[18]

It is true that the Act expresses a congressional policy against injunctions, but only injunctions grant-

---

[17] Section 2 of the Norris-LaGuardia Act states that the Act is concerned with the jurisdiction of the courts of the United States and contains limitations upon jurisdiction of *courts of the United States*. 47 Stat. 70, 29 U.S.C. §102. The first sentence of the anti-injunctive provision in §4 begins: "*No court of the United States* shall have jurisdiction to issue any restraining order or temporary or permanent injunction . . . ." (Emphasis supplied.) 47 Stat. 70, 29 U.S.C. §104. Section 13(d) of the Act provides: "The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia." 47 Stat. 73, 29 U.S.C. §113.

There are many cases which indicate that the Norris-LaGuardia Act refers only to courts of the United States. See, e.g., *Sinclair Ref. Co. v. Atkinson*, 370 U.S. 195, 82 S. Ct. 1328 (1962); *Marine Cooks v. Panama S.S. Co.*, 362 U.S. 365, 80 S. Ct. 779 (1960); *Brotherhood of R.R. Trainmen v. Toledo, Peoria & W. R.R.*, 321 U.S. 50, 58, 63-64, 64 S. Ct. 413, 420 (1944); *United States v. Hutcheson*, 312 U.S. 219, 231, 61 S. Ct. 463, 466 (1941); *Milk Wagon Drivers' Union v. Lake Valley Farm Prods., Inc.*, 311 U.S. 91, 61 S. Ct. 122 (1940). Frankfurter & Greene, The Labor Injunction, p. 220 (1930) states that the Act "explicitly applies *only* to the authority of United States courts 'to issue any restraining order or injunction'. All other remedies in federal courts and all remedies in state courts remain available."

[18] This statement is especially significant in light of the fact that the majority and the dissent were squarely at variance on the question of whether state courts were precluded from granting injunctive relief.

ed by federal courts.[19] Congressional enactment of §301, without amendment of the Norris-LaGuardia Act, with Congress fully aware of state court remedies, strongly indicates reaffirmance of existing federal labor policies which limit the injunctive jurisdiction of federal courts, but which do not attempt to limit that of state courts.

We recognize that our decision may make our state courts a more attractive forum than federal courts insofar as plaintiffs who seek to enforce collective agreements may be concerned. But this consequence is not, in our view, in any way controlling on the issue to be decided. Nor does this attractiveness entail a subversion or erosion of §301 because we readily acknowledge

[19] It should be borne in mind that the policy against injunctions is an expression of federal labor policy in a different sense than those doctrines and principles that the Supreme Court of the United States has "fashioned", in the absence of explicit congressional direction, under the mandate of §301 as construed in *Textile Workers Union v. Lincoln Mills*, supra note 8. E.g., *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S. Ct. 909 (1964) (effect of corporate merger on rights under collective agreement); *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers*, 370 U. S. 254, 82 S. Ct. 1346 (1962) (effect of union's breach on employer's duty to arbitrate); *Local 174, Teamsters Union v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571 (1962) (implication of no-strike promise); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S. Ct. 1347 (1960) (criteria of arbitrability); *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 80 S. Ct. 489 (1960) (effect of union's breach on rights of third-party obligee).

In such cases, the policy articulated by the Supreme Court binds states as well. But the federal policy against injunctions has a different origin. As *Sinclair Ref. Co. v. Atkinson* makes very clear, 370 U.S. at 201-02, 215, 82 S. Ct. at 1332, 1339, it was based on an explicit congressional decision, made 15 years prior to the enactment of §301, and deliberately not abandoned at the time of that enactment. Where such a legislative declaration of policy is in terms addressed to federal courts only, we do not read *Lucas Flour* as finding in §301 warrant for transcending that limitation and restricting traditional state remedies.

14

that federal law, where applicable, governs suits of the present type even though the action is brought in a state court.

We conclude, therefore, that the injunctive jurisdiction of the court below has not been precluded.[20]

## III

Since jurisdiction exists, this case will be remanded to the court below so that the trial may proceed and

---

[20] This view is in accord with our pre-*Sinclair* decisions in *Philadelphia Marine Trade Ass'n v. Int'l Longshoremen's Ass'n*, 382 Pa. 326, 115 A. 2d 733, cert. denied, 350 U.S. 843, 76 S. Ct. 84 (1955), and *General Bldg. Contractors' Ass'n v. Local 542*, 370 Pa. 73, 87 A. 2d 250 (1952). *McCarroll v. Los Angeles County Dist. Council of Carpenters*, 49 Cal. 2d 45, 57-64, 315 P. 2d 322, 330-33 (1957), cert. denied, 355 U.S. 932, 78 S. Ct. 413 (1958), *Curtis v. Tozer*, 374 S.W. 2d 557, 591-92 (Ct. App. Mo. 1964), *R.C.A. v. Local 780, Int'l Alliance of Theatrical Stage Employees*, 160 So. 2d 150 (Dist. Ct. App. Fla. 1964), and *C. D. Perry & Sons, Inc. v. Robilotto*, 39 Misc. 2d 147, 240 N.Y.S. 2d 331 (S. Ct. 1963), are also in accord with the view stated herein. See also *American Dredging Co. v. Local 25, Marine Div., Int'l Union of Operating Eng'rs*, 338 F. 2d 837 (3d Cir. 1964), cert. denied, 380 U.S. 935, 85 S. Ct. 941 (1965); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 505 n.2, 82 S. Ct. 519, 521 n.2 (1962).

In holding the provisions of the Norris-LaGuardia Act to be inapplicable to state courts, the court in *McCarroll* said: "Section 301 of the Labor Management Relations Act does not embody any policy that requires a state court enforcing rights created by that section to withhold injunctive relief. The principal purpose of section 301 was to facilitate the enforcement of collective bargaining agreements by making unions suable as entities in the federal courts, and thereby to remedy the one-sided character of existing labor legislation. . . . We would give altogether too ironic a twist to this purpose if we held that the actual effect of the legislation was to abolish in state courts equitable remedies that had been available, and leave an employer in a worse position in respect to the effective enforcement of his contract than he was before the enactment of section 301." 49 Cal. 2d at 63-64, 315 P. 2d at 332.

evidence may be received as to whether the contract is binding upon the parties, as to circumstances of appellant's unilateral termination of the contract, and as to the various other contractual issues involved.[21] Of major importance will be the question of the failure to employ the provisions for resolving disputes, particularly whether or not arbitration should be compelled.[22] These issues, of course, must be decided under federal labor law. *Local 174, Teamsters Union v. Lucas Flour Co.,* supra.

In the event that it is determined by the court below at a later state of this proceeding that there is, in fact, no contractual basis upon which it may assert jurisdiction, then the court shall dismiss the suit. And, of course, if it is shown that the contract supports only part of the requested relief, only that relief may be granted.

The order of the court below is affirmed and the case is remanded for further proceedings consistent herewith.

Mr. Justice MUSMANNO and Mr. Justice EAGEN dissent.

---

[21] Our holding that the complaint alleges violations of a collective bargaining contract also disposes of appellant's contention that the Pennsylvania Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, §1 et seq., as amended, 43 P.S. §206a et seq., deprives the court below of jurisdiction of this case. Act of June 2, 1937, P. L. 1198, §4, as amended by Act of June 9, 1939, P. L. 302, §1(a), 43 P.S. §206d(a) ; *Philadelphia Marine Trade Ass'n v. Int'l Longshoremen's Ass'n,* 382 Pa. 326, 332, 115 A. 2d 733, 736, cert. denied, 350 U.S. 843, 76 S. Ct. 84 (1955) (Act inapplicable where labor agreement exists).

[22] See *Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 84 S. Ct. 401 (1964) and *United Steelworkers v. Westinghouse Elec. Corp.,* 413 Pa. 358, 196 A. 2d 857 (1964), which hold that state courts have jurisdiction to enforce arbitration provisions contained in collective bargaining agreements.

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority recognizes, as it must, that the lower court's jurisdiction to inquire into this controversy, involving conduct that is arguably a federal unfair labor practice, depends, in the first instance, upon the existence or nonexistence of a complaint which alleges a violation of a collective bargaining contract. *Smith v. Evening News Association,* 371 U.S. 195 (1962). If the complaint has not so alleged then it must be dismissed. Naturally, there is no need for the lower court to have a hearing on whether there was or continues to be a violation, in fact, of a collective bargaining agreement where no such violations have been alleged. And just as naturally, in determining whether the complaint so alleges, we must confine our attention to what the *plaintiff* states in that complaint. Having done so, I must frankly note that I find nothing but sheer hypothesis in the majority's all important jurisdictional statements: "Various allegations of the complaint indicate *that the contract continues to exist and that plaintiff suffered, and continues to suffer, damages as a result of appellant's continuing breach."* and "The complaint further alleges that subsequent to the *unlawful termination . . . ."* (Emphasis supplied). Because of my emphatic disagreement with the majority's view of the complaint I am compelled to record its pertinent parts here:

"1. Shaw Electric Company, Inc., is a Pennsylvania corporation with offices at 7634 Fairfield Street, Philadelphia, Pennsylvania, engaged in the electrical contracting business.

"2. The defendant, International Brotherhood Electrical Workers Local Union No. 98, is a union whose members are electrical workers and who has jurisdiction in and for the County of Philadelphia and suburbs of all unionized electrical workers.

"3. At the times hereinafter mentioned the plaintiff had a contract with the defendant whereby the defendant would supply unionized electrical workers to perform work for the plaintiff. A true and correct copy of that contract is attached hereto, marked plaintiff's Exhibit 'A.'

"4. During and prior to 1956, the plaintiff operated his business with non-unionized employees, one of whom was an individual by the name of Henry Lee.

"5. On or about March 15, 1956, the aforesaid Henry Lee entered the military service.

"6. During the time the aforesaid Henry Lee was in the military service and subsequent thereto the plaintiff entered into a contract with the defendant to employ union help and help supplied by the defendant.

"7. On or about December, 1957, Henry Lee was discharged from the military service and applied for statutory re-employment rights under the Uniform Military Training & Service Act.

"8. At this time, the plaintiff did orally and in writing request that defendant: (a) allow Henry Lee to become a member of defendant union; (b) allow plaintiff to employ Henry Lee. To both of these requests the defendant did refuse.

"9. The United States Department of Employment, Bureau of Veteran Re-employment Rights insisted that plaintiff re-employ the aforesaid Henry Lee and Plaintiff was advised by the government and counsel that unless he did he would suffer serious financial consequences.

"10. In order to satisfy the re-employment provisions of the Uniform Military Training & Service Act, the plaintiff did re-employ the aforesaid Henry Lee in separate jobs so as not to conflict with his unionized help.

"11. On August 9, 1961, as a consequence of the foregoing re-employment of Henry Lee, the defendant did terminate its agreement with the plaintiff.

"12. Subsequent to said termination, the defendant did cause its members to picket jobs on which the plaintiff was employed so as to cause plaintiff to lose work which he was then doing.

"13. The plaintiff has attempted to be reinstated by the defendant, but the defendant has refused to reinstate said plaintiff.

"14. Solely as a result of the aforesaid termination the plaintiff has been unable to bid or obtain work requiring unionized help. As a consequence, the plaintiff has suffered irreparable harm and great financial damage.

"15. During the period from August 9, 1961 to date plaintiff has suffered financial damages in excess of One Hundred Thousand ($100,000.00) Dollars and will suffer continuing damages in the future by reason of defendant's actions.

"WHEREFORE, the plaintiff prays your Honorable Court:

"(a) Preliminarily and after final hearing permanently enjoin defendant from picketing the plaintiff on jobs in which plaintiff is employed or at plaintiff's place of business or interfering with the conduct of plaintiff's business in any manner whatsoever.

"(b) Preliminarily and after final hearing, permanently, issue a mandatory injunction requiring defendant to perform in exact accordance with a contract with plaintiff so that he may be able to obtain unionized help.

"(c) Order defendants to pay all damages that have accrued and will continue to accrue by reason of the illegal termination and illegal actions thereafter.

"(d) To grant such other remedies and relief as shall be deemed appropriate under the circumstances."

It must be obvious from the complaint and the prayer for relief that the conduct of which the plaintiff complains is the union's picketing and refusal to

supply plaintiff with unionized labor. But nowhere does the complaint suggest in any way how this conduct is a violation of a collective bargaining agreement. True, it alleges that at one time the union had agreed to supply unionized labor. But it also recognizes and alleges in more than one place—and this is crucial—that the contract was terminated by the union. Nowhere does the complaint indicate that the union had agreed not to terminate the contract or had agreed that it would terminate only for specified reasons and that its reasons in this case violated the contract. In short the complaint neither alleges a past violation of a collective bargaining agreement, a valid subsisting agreement, or a continued violation of a valid subsisting agreement.

There is one, and only one, fact asserted by the complaint which would be grounds for concluding that the union's picketing and refusal to supply union labor is unlawful—that such conduct was induced by and directed at the employer's rehiring, pursuant to federal law, one Henry Lee, whom the union refused to admit to membership. But it is not alleged that it is a collective bargaining agreement that makes such conduct unlawful. On the other hand, such conduct is arguably an unfair labor practice. Section 8(b)(2) of the National Labor Relations Act provides: "(b) It shall be an unfair labor practice for a labor organization or its agents . . . (2) to cause or attempt to cause an employer . . . to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; . . ." 29 U.S.C.A. §158 (b)(2).

Since the conduct complained of is not a violation of a collective bargaining agreement and is arguably

an unfair labor practice the lower court has no jurisdiction.

The lower court's view of the complaint is precisely the same as mine. The final paragraph of its opinion states: "Accepting the averments of the complaint before us, we could not conclude otherwise than that plaintiff was being subjected to picketing in order to compel it to violate the federal law respecting restoration of a discharged veteran to his former employment and thereby to subject itself to possible sanctions."

Not only does the complaint fail to make out a cause of action which is within the lower court's jurisdiction but nowhere in its brief or reply to appellant's second supplemental brief does the employer even attempt to meet the union's assertion of the obvious insufficiency of the complaint in respect to allegations which would give the lower court jurisdiction. Not only are the employer's complaint and briefs insufficient in this respect but also at oral argument employer frankly admitted the "inartfulness" of the complaint in said respect.

In view of the foregoing, how is it that the majority can hypothesize: *"Various allegations of the complaint indicate that the contract continues to exist and that plaintiff suffered, and continues to suffer, damages as a result of appellant's continuing breach."*? The majority's jurisdictional hypothesis relies entirely upon one thing. Attached to the complaint is a copy of what is alleged to be the agreement between the union and the employer before the union terminated it. In that alleged former agreement are clauses setting forth procedures to be followed in the event that either party decides to terminate the contract. Although the majority does not expressly say so it must be implying that these termination procedures were not followed by the union and that it therefore breached its contract and that the lower court therefore has jurisdic-

tion. *But the complaint does not allege the union violated these provisions.* These provisions are not in the slightest way alluded to in the complaint as the basis for the cause of action. Even if the union did violate these procedures, the plaintiff's failure to rely on these provisions and allege a breach of them by the union is only natural since such a breach would not give the plaintiff a right to the relief requested. *There is nothing in these procedures which would have prohibited the union from terminating the contract and from refusing to supply unionized employees and from picketing the employer.*

How is it that our Court can hypothesize a complaint on behalf of the plaintiff in order to establish jurisdiction? The plaintiff has not complained of the things of which the majority says it complained. Whose complaint is it? Unfortunately, in this case involving what is arguably an unfair labor practice this Court, just as in *City Line Open Hearth, Inc. v. Hotel, Motel & Club Employees Union*, 413 Pa. 420, 197 A. 2d 614 (1964), has, in my opinion, adduced on its own motion an allegation or set of facts which will fit a federal rule of law that permits the retention of state jurisdiction. Why? We should be as diligent in preserving the exclusive or primary jurisdiction of federal administrative agencies as we are in preserving the exclusive or primary jurisdiction of our own administrative agencies. And this is of especially great importance where the consequence of a failure to do so is a lack of the uniformity vital to sound labor relations.

Because the plaintiff has failed to allege a cause of action resting upon a violation of a collective bargaining agreement and because the alleged conduct is arguably an unfair labor practice, I would hold that the complaint should be dismissed on the ground that the Commonwealth's jurisdiction is preempted by the jurisdiction of National Labor Relations Board. *San*

*Diego Building Trades Council v. Garmon,* 359 U.S. 236 (1959). Accordingly, I find it unnecessary to discuss whether state courts may *enjoin* violations of collective bargaining agreements in view of the unavailability of such injunctions in federal courts, Norris-LaGuardia Act, 29 U.S.C.A. §104, even in cases involving violations of collective bargaining agreements under §301 of the Labor Management Relations Act, *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195 (1962), and in view of the requirement that state courts apply to such violations federal law, as derived, inter alia, from federal labor policy. *Local 174 Teamsters v. Lucas Flour Co.,* 369 U.S. 95 (1962).