## American Chain and Cable Company v. Automotive and Aircraft Cable Workers Union

*Bedford, Waller, Griffith, Darling & Mitchell* and *Reed, Smith, Shaw & McClay,* for plaintiff.

*Rosenn, Jenkins & Greenwald,* for defendants.

PINOLA, P. J., October 17, 1966.—Plaintiff has filed a complaint seeking injunctive relief restraining defendant union and its employes from engaging in or continuing to engage in an alleged slowdown or impeding of work at plaintiff's plant in Exeter, Luzerne County. Defendant is the recognized collective bargaining agent for the employes at this plant.

Plaintiff alleges that on or about August 10, 1966, defendant union and its individual members com-

menced a concerted slowdown of production by working at a rate substantially below the pre-existing levels of production. The union, on the other hand, denies the existence of any slowdown at all and contends that, even if a slowdown does exist, it is not responsible for it.

Article VIII, section I, of the collective bargaining agreement between the parties reads as follows:

"Should grievances arise between the Company and the Union as to the interpretation or application or compliance with the provisions of this Agreement, or as to any question relating to the Wages, Hours of work and other conditions of employment or any changes therein, of any employee, there shall be no interruption or impeding of the work, work stoppages, strikes or lockouts on account of such difference, but an earnest effort shall be made to settle the matter promptly in accordance with the following procedure":

Defendant contends, inter alia, that plaintiff's sole and exclusive remedy in this case is arbitration, according to the terms of the collective bargaining agreement between the parties, and that, as such, this court is without jurisdiction to grant plaintiff's request for an injunction.

In considering this case, we bear in mind that the arbitration of labor disputes is not a matter of compulsion, but a matter of contract and agreement between the parties, and that, absent an agreement between the parties to arbitrate an issue, no court can compel the parties to arbitrate that issue. Furthermore, in determining whether labor disputes are arbitrable or, indeed, in determining any issue in connection with collective bargaining agreements, we are bound to apply the substantive principles of Federal labor law: United Steel Workers of America, AFL-CIO v. Westinghouse Electric Corporation, 413 Pa. 358; Shaw Electric Company, Inc. v. International

Brotherhood Electrical Workers Local Union No. 98, 418 Pa. 1.

According to United Steelworkers of America v. American Manufacturing Co., 363 U. S. 564, a court must have positive assurance that a dispute is not arbitrable before it may refuse to order arbitration, and any doubts must be resolved in favor of arbitration. Thus, the question here presented is whether or not this dispute is on its face governed by article VIII, section I, of the collective bargaining agreement.

The company takes the position that the language of the agreement forecloses arbitration of employer grievances, and thus, the matter is properly before the court. In support of its position, it cites Atkinson v. Sinclair Refining Co., 370 U. S. 238, and Local Union No. 721, United Packinghouse, Food & Allied Workers, AFL-CIO v. Needham Packing Co., 376 U. S. 247.

In Atkinson, the court held that whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, were matters to be determined by the court on the basis of the contract entered into by the parties. In Atkinson and Packinghouse, there was an express limitation that arbitration boards should consider only employe grievances and that arbitration could be invoked only at the option of the union.

We think the language involved in our case is more akin to that in Drake Bakeries, Incorporated v. Local 50, American Bakery & Confectionery Workers International AFL-CIO, 370 U. S. 254, There, the contract provided as follows:

" 'The parties agree that they will promptly attempt to adjust all complaints, disputes or grievances arising between them involving *questions of interpretation or application* of any clause or matter covered by this contract, or any act or conduct or relation between the parties hereto, directly or indirectly' ".

In our contract, both the company and the union

have agreed to arbitrate any question concerning the *"Interpretation or application or compliance with the provisions of this agreement"*.

This is broad language, indeed, and does not, as in Atkinson, exclude claims or complaints of the employer.

It is true that the procedure outlined on pages 19 and 20 of the collective bargaining agreement seems to refer to employe grievances. This, however, is due to the fact that the broad language of section I of article VIII above quoted contemplates employe grievances as to wages, hours of work, and other conditions of employment, and a procedure is set up to handle grievances of that type. The fact that the procedure to be followed in the event of employer grievances is not as detailed is not in our view determinative, in light of the broad language of article VIII, section I.

Moreover, section VI of article VIII would seem to apply clearly to employer grievances. It provides as follows:

"At least two specified periods per month shall be agreed upon between the grievance committee and the management for the presentation and discussion of grievances hereunder, or other matters of mutual interest, provided, however, the matter pertaining to discharge *or other matters* that cannot be reasonably delayed until the time of the next regular meeting may be presented at any time in accordance with the foregoing provision".

Here, as in Drake, supra, the union denies that there was any slowdown at all or any breach of contract at all.

In United Steel Workers of America, AFL-CIO v. Westinghouse Electric Corporation, supra, the court declared:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only

the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad".

In the instant matter, had the parties intended to limit arbitration to employe grievances, we think they would have clearly expressed such intention, as was done in Atkinson.

Accordingly, we enter the following

### ORDER

Now, October 17, 1966, the application of plaintiff for a preliminary injunction is denied.